**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DAIRYLAND PRODUCE LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **ANTHONY SMITH and** | § | |
| **FLORIDA VEG INVESTMENTS LLC** | § | |
| **dba MR GREENS PRODUCE,** | § | |
| | § | |
| *Defendants.* | § | |

**DECLARATION OF MELINDA MUNOZ**

1.  My name is Melinda Munoz. I am over the age of 21 and competent to make this Declaration. My business address is 1005 N. Cockrell Hill Rd., Dallas, Texas 75211. The facts set forth herein are within my personal knowledge and are true and correct.

2.  I am a Human Resources Director for Plaintiff Dairyland Produce LLC ("**Dairyland**").

3.  Defendant Anthony Smith ("**Smith**") was hired by Hardie's Fruit and Vegetable Company, LP ("**Hardie's**") as a Sales Manager effective January 19, 2022.

4.  Effective January 16, 2023, Smith became the Director of Sales in Texas for Hardie's, reporting directly to Greg Rowe, Hardie's then-CEO (who became its President following the Acquisition).

5.  Dairyland's parent company acquired Hardie's on or about March 20, 2023 (the "**Acquisition**").

6.  As part of the Acquisition, Smith became an employee of Dairyland effective March 20, 2023, and remained employed as the Director of Sales in Texas.

7.  Effective September 14, 2023, Smith transferred to the position of Sales Manager for Dairyland, reporting directly to Regional Vice President Ethan Bryan.

8.  As a Sales Manager for Dairyland, Smith received higher annualized compensation as compared to his Director of Sales role (taking into account his variable compensation).

9.  Dairyland terminated Smith's employment on March 13, 2024.

10. In connection with his employment with Dairyland, Smith signed a Confidentiality, Non-Solicitation, Non-Interference, and Non-Competition Agreement with Dairyland, effective March 20, 2023 (the "Agreement"). A true and correct copy of the Agreement is attached hereto

as <u>Exhibit A</u>.

11.      Dairyland also maintains an Employee Handbook, applicable to Smith and all other employees, which provides *inter alia* for the protection of Dairyland's confidential information and intellectual property. A true and correct copy of relevant portions of Dairyland's Employee Handbook is attached hereto as <u>Exhibit B</u>.

12.      All Dairyland employees, including Smith, are required to complete periodic refresher training regarding Dairyland's policies, including its Code of Conduct.

13.      Smith completed his most recent Code of Conduct refresher training on or about January 23, 2024.

14.      I am a custodian of records for Dairyland. The exhibits attached hereto are records kept by Dairyland in the regular course of its business, and it was the regular course of business of Dairyland for an employee or representative with knowledge of the act, event, condition, opinion, or circumstance recorded, to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

15.      I declare under penalty of perjury that the foregoing is true and correct.

Executed on the ___29th___ day of April, 2024.

_____
Melinda Munoz

# EXHIBIT A

## EMPLOYEE CONFIDENTIALITY, NON-SOLICITATION, NON-INTERFERENCE AND NON-COMPETITION AGREEMENT

This Employee Confidentiality, Non-Solicitation, Non-Interference and Non-Competition Agreement (the "Agreement"), is made and entered into by and between Anthony M Smith ("Employee") and Dairyland Produce, LLC, a Delaware limited liability company (the "Company"), on March 20, 2023.

As a condition of and in consideration for Employee's commencement of and/or continued employment with the Company, the Company's entrusting to Employee new Confidential Information (defined below) relating to the Company's business during Employee's employment after this Agreement is signed, the Company providing the Employee specialized training related to the Company's business and/or allowing the Employee access to customers and the ability to use and develop goodwill with them, and other good and valuable consideration, the receipt and sufficiency of which Employee hereby acknowledges, Employee hereby agrees to comply with the terms and conditions of this Agreement, as follows:

### 1. Representations, Warranties, and Acknowledgments.

1.1     Employee represents and warrants that except for this Agreement or as Employee has specifically disclosed to the Company in writing at the end of this Agreement as Exhibit A (and, if contained in a written agreement, provided a copy of such agreement to the Company), Employee is not bound by any written agreement or obligation that directly or indirectly (a) restricts Employee from using or disclosing any confidential or proprietary information of any other person or entity during the course of Employee's employment with the Company; (b) restricts Employee from competing with, or soliciting any actual or potential customer or business from, any person or entity; (c) restricts Employee from hiring, retaining, soliciting, or attempting to solicit any current or former employee of or consultant to any other person or entity; or (d) limits Employee's ability to perform any assigned duties for the Company.

1.2     Employee agrees and acknowledges that it is and will continue to be a condition of Employee's employment with the Company that Employee never use or disclose in the course of Employee's employment with the Company any trade secret or confidential or proprietary information of any person or entity by which Employee has been employed or for which Employee has provided any services.

### 2. Inventions.

2.1     During and after Employee's employment with the Company, Employee shall promptly disclose, assign and transfer to the Company any right, title or interest in any inventions, designs, discoveries, works of authorship, creations, ideas, developments, improvements or software (collectively, "Inventions"), that Employee may have or acquire, in whole or in part, as a result of Employee's employment by the Company that relate in any way to any aspect of the Company's business, whether or not any such Invention is created, originated, developed or conceived of by Employee alone or with others, or during business hours or on Employee's personal time, and whether or not the Invention is or can be protected under any applicable patent, trademark, service mark, copyright or trade secret laws. Employee shall transfer such Inventions to the Company free of all encumbrances and restrictions, and promptly take any action, including signing and delivering to the Company any documents that the

- 1 -

Company may request which it deems necessary to effect the transfer or prosecution of ownership rights in the United States and/or any other country.

2.2    Notwithstanding anything else in this Agreement, Section 2.1 shall not apply to an invention for which no equipment, supplies, facility or trade secret information of the Company was used and which was developed entirely on Employee's own time, unless the invention (a) relates to the business of the Company or the Company's actual or demonstrably anticipated research or development; or (b) results from any work that Employee performs or has performed for the Company.

2.3    Employee acknowledges that any computer programs, documentation, works of authorship or other copyrightable works that Employee creates in whole or in part during Employee's employment with the Company shall (a) be considered "works made for hire" under Section 101 of the U.S. Copyright Act, 17 U.S.C. § 101; (b) be considered part of the Confidential Information (as defined in Section 3 below); and (c) be covered by Section 3 below.

## 3.    <u>Confidential Information.</u>

3.1    Employee acknowledges and agrees that Employee's duties will expose Employee to, and because of Employee's promises to the Company under this Agreement, the Company agrees to provide Employee with, confidential and proprietary data and information concerning the business of the Company and its parents and affiliates, referred to herein as "<u>Confidential Information.</u>"  Confidential Information includes but is not limited to: any and all information or material propriety to the Company or its affiliates, or any other information provided by or relating to the Company that Employee obtains knowledge of or access to, whether orally or in writing, as a result of the Company's direct discussions with Employee or Employee's employment with the Company, regardless of any and all analyses, compilations, studies or other documents, records or materials prepared by the Company that contain or otherwise reflect or are based, in whole or in part, on the Company's Confidential Information, and includes, but is not limited to, the following types of information and other information of a similar nature (whether or not reduced to writing):  trade secrets as that term is defined and interpreted under the Uniform Trade Secrets Act ("UTSA") and the Defend Trade Secrets Act ("DTSA") and any state equivalent, customer/prospective customer information, customer/client lists and all lists or other compilations containing client, customer or vendor information, costs, profits, markets, sales, products, pricing policies, price lists, operational methods, technical processes, inventions, algorithms, ideas, methods, models, work flows, specifications, formulas, software, source code, object code, data, programs, patent and trademark applications, other works of authorship, contracts and arrangements, business records, financial information and projections, compensation arrangements, personnel files, tax arrangements and strategies, intercompany arrangements, know-how, improvements, discoveries, research and development, designs and techniques, existing or proposed acquisitions, strategic alliances, or joint ventures, and information not readily available to the public.  "Confidential Information" shall not be required to be marked as "confidential," "proprietary," "secret," or any other similar designation. Specifically, Confidential Information includes, but is not limited to, any and all   information of a confidential, proprietary, or secret nature which is related in any way to: (a) the present or future business of the Company and its clients, (b) the research and development efforts of the Company and its clients, (c) the registration of patents, trademarks, or inventions of the Company and its clients, or (d) the business of any customer or supplier of the Company.

- 2 -

EE
Initials

Company
Initials

3.2     Employee acknowledges and agrees that each and every part of the Confidential Information (a) has been developed by the Company at significant effort and expense is sufficiently secret to derive economic value from not being generally known to other parties; (b) is proprietary to and a trade secret of the Company and, as such, is a valuable, special and unique asset of the Company; and (c) constitutes a protectable business interest of the Company. Employee also acknowledges and agrees that any unauthorized use or disclosure of any Confidential Information by Employee will cause irreparable harm and loss to the Company.

3.3     Employee acknowledges and agrees that the Company owns the Confidential Information.  Employee agrees not to dispute, contest, or deny any such ownership rights either during or after Employee's employment with the Company.

3.4     Throughout Employee's employment with the Company and at all times thereafter (a) Employee shall hold all Confidential Information in the strictest confidence and take all reasonable precautions to prevent its inadvertent disclosure to any unauthorized person; (b) Employee shall not, directly or indirectly, use, disclose, divulge, communicate, or make available to any other person or entity, any of the Confidential Information, other than (i) as specifically required by law, regulation or legal process; or (ii) in the proper performance of Employee's duties during Employee's employment with the Company; (c) Employee will not use any Confidential Information to attempt to solicit, induce, recruit, or take away any of the Company's clients, customers or employees, or to interfere with or attempt to interfere with Company's relationship with any of its vendors or suppliers; and (d) if Employee learns that any person or entity is taking or threatening to take any actions which would compromise any Confidential Information, Employee will promptly advise the Company of all facts concerning such action or threatened action.  Employee understands that the obligations under this Section 3.4 shall terminate only at such time (if any) as the Confidential Information in question becomes generally known to the public other than through a breach of Employee's obligations under this Agreement or any other action or failure to act by Employee or anyone acting in concert with or on behalf of Employee.  If Employee is requested pursuant to, or required by, any law, regulation or legal process to disclose, divulge or communicate any Confidential Information, Employee shall provide the Company with written notice of such request or requirement as soon as possible, and shall comply with the Company's efforts to obtain any court order or other appropriate relief to prevent or limit any such disclosure.  Nothing in this Agreement prohibits Employee from reporting possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, Congress or any agency inspector General or making other disclosures that are protected under the whistleblower provisions of federal law or regulation.

4.     **Non-Competition and Non-Solicitation.**

4.1     Definitions:

"Competitive Products or Services" means any products or services that the Company sold or provided or was actively preparing to sell or provide during Employee's employment by the Company (or, in the event that Employee is no longer employed by the Company, during the 12-month period ending on Employee's last day of employment with the Company); and

"Restricted Period" means the period of twenty-four (24) months following Employee's last day of employment with the Company, regardless of whether such employment

- 3 -

is terminated by Employee or the Company or the reason for such termination; provided, however, that the Restricted Period shall be extended by one day for each day that Employee is in breach of any of Employee's obligations under this Section 4; and

4.2     Other than in the proper performance of Employee's duties while employed by the Company, during Employee's employment and the Restricted Period, Employee shall not, directly or indirectly, (whether as employee, consultant, independent contractor, owner, officer, partner, principal, joint venturer, shareholder, director, member, manager, investor, agent, or otherwise), sell, promote or provide, or attempt to sell, promote or provide, any Competitive Products or Services to any person or entity that was, at any point during the previous 12 months (or, in the event that Employee is no longer employed by the Company, during the 12-month period ending on Employee's last day of employment with the Company): (a) a customer, client or referral source of the Company with whom or with which Employee had any personal contact or for whom or for which Employee had any responsibility during such period; or (b) a customer, client or referral source of the Company that Employee was involved in soliciting or attempting to solicit on the Company's behalf, at any point during the 12-month period ending on Employee's last day of employment with the Company.

4.3     During Employee's employment and the Restricted Period, Employee shall not solicit for employment or retention, knowingly assist in the employment or retention of, or seek to influence or induce to leave the Company's employment or service, any person who is employed or otherwise engaged by the Company at the time of such activity by Employee or during the previous 12 months (or, in the event that Employee is no longer employed by the Company, during the 12-month period ending on Employee's last day of employment with the Company).

4.4     During Employee's employment and for a period of six (6) months from Employee's last date of employment (regardless of the reason for Employee's termination and whether such termination is voluntary or involuntary), Employee shall not (a) be employed in a supervisory, managerial or employee capacity by, or (b) directly or indirectly provide (whether as employee, consultant, independent contractor, owner, officer, partner, principal, joint venturer, shareholder, director, member, manager, investor, agent, or otherwise) any services similar to those Employee provided to the Company during Employee's employment with the Company to any business, enterprise, person, or entity that engages in or is actively planning to engage in any business that is directly and materially competitive with the business conducted by the Company during Employee's employment with the Company and that operates within, or within 50 miles of, any county in which Employee worked or for which Employee was responsible during Employee's employment by the Company, including but not limited to Performance Food Group, Inc., Sysco Corporation, Gordon Food Service, Inc., Meats by Linz, Inc., Lone Star Meats, Ltd., US Foods Holding Corp., Ben E. Keith Company, Martin Preferred Foods, L.P., Hana Gourmet, Inc. dba Beyond Gourmet, Hardie's F&V, LLC, Brother's Produce, Incorporated, Chefs' Produce of Dallas, Inc., Chefs' Produce of Houston, Inc., Russell McCall's, Inc., dba Gourmet Foods International, D'Artagnan, Inc., Euro-Mid, Inc., Labatt Food Service LLC, Lisanti Foodservice of Texas Inc., Dawn Foods International, Inc., Shamrock Foods Company, and Regalis Texas, LLC (collectively with their current and future affiliates, "Named Competitors").

4.5     Furthermore, during Employee's employment with the Company and for a period of one (1) year after Employee's last date of employment (regardless of the reason for Employee's termination and whether such termination is voluntary or involuntary), Employee

- 4 -

agrees to not participate in any joint venture or partnership or have direct ownership of any Named Competitor or other entity providing Competitive Products and Services (excluding ownership of less than 1% of the outstanding shares of company stock of a publicly traded company that is a competitor). The foregoing list of Named Competitors is non-exclusive and the absence of any entity from this list shall not be construed to limit the Company from designating such entity as a Competitor at any future time.

4.6     Employee agrees to the foregoing covenants contained in this Section 4 in exchange for and ancillary to the other promises set forth in this Agreement.  Employee agrees and acknowledges that the Company invests a substantial amount of time and money in recruiting and training, and shares its Confidential Information with, the Company's employees. Employee agrees and acknowledges that the scope and duration of the restrictions in this Section 4 are reasonable and necessary to protect the Company's legitimate business interests in its Confidential Information, business goodwill and relationships, and contain reasonable limitations as to the scope of activity to be restrained, the period during which such activity must be restrained, and the geographic area in which such activities must be restrained.

5.     **Enforcement.**

5.1     Employee agrees and acknowledges that the covenants set forth in Sections 2 through 4 of this Agreement are reasonable and necessary to protect the Company's legitimate business interests and contain reasonable limitations.     Employee further agrees and acknowledges that Employee can honor each and every part of Sections 2 through 4 of this Agreement without being unreasonably restricted in Employee's ability to earn a living for Employee and Employee's dependents both during and after Employee's employment with Company.

5.2     Employee recognizes and agrees that any actual or threatened breach of any part of Sections 2 through 4 of this Agreement will result in irreparable harm and continuing damage to the Company, and that the remedy at law for any such actual or threatened breach will be inadequate. Accordingly, in addition to any other legal or equitable remedies that may be available to the Company in such event, Employee agrees that the Company shall be entitled to seek and obtain an injunction or injunctions, without bond or other security, to prevent any threatened breach, remedy any actual breach, and prevent any future breach of any such section. Employee agrees to reimburse the Company for all expenses, including costs and reasonable attorneys' fees, incurred by the Company in connection with its successful enforcement of any of its rights under this Agreement.

5.3     If any part of this Agreement is held void, illegal, or unenforceable, or in conflict with any applicable law, every other part of this Agreement shall remain valid and fully enforceable. If any court refuses to enforce any part of this Agreement as written, it is the desire of Employee and the Company that the court modify that part to the minimum extent necessary to make it enforceable under applicable law, and to fully enforce that provision and the rest of this Agreement as so modified.

6.     **Return of Property.**  At the Company's request (and, without any request, as soon as Employee's employment with the Company ends for any reason), Employee shall immediately deliver to the Company (a) all of the Company's property that is then in Employee's possession,

- 5 -

custody or control, including, without limitation, all keys, computer hardware, computer software and programs, data, materials, papers, books, files, documents, records, policies, client and customer information and lists, financial data, marketing information and any other property or information that Employee has relating to the Company (whether those materials are in paper or electronically stored form); and (b) any and all documents or other items (including but not limited to all electronically stored information) containing, summarizing, or describing any Confidential Information, including all originals and copies.

**7.     Employment at Will.**  Nothing in this Agreement impacts that Employee is and will continue to be employed at will (subject to any contractual notice period), meaning that either Employee or the Company may terminate such employment at any time for any reason or no reason, with or without notice and with or without cause.

**8.     Notice to Future Employers.**  Employee agrees that during Employee's employment with the Company and for a period of twenty-four (24) months following Employee's termination of employment with the Company for any reason, Employee will inform each new employer, prior to accepting employment, of the existence of this Agreement and the terms contained herein.  Employee understands that the Company may send a copy of this Agreement to, or otherwise make the provisions hereof known to, any of Employee's potential employers.

**9.     Other Legal Obligations.**  Nothing in this Agreement shall limit any of Employee's obligations to the Company or its affiliates under common law or any statute, including but not limited to Texas Uniform Trade Secrets Act and the trade secret statute of any state in which Employee or the Company is doing or has done business.

**10.    Entire Agreement.**  This Agreement, along with any exhibits attached hereto, constitutes the entire Agreement and understanding between Employee and the Company with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements or representations by or between the parties, written or oral, which may have related to the subject matter hereof.  The terms of this Agreement cannot be changed except in a later document signed by Employee and an authorized representative of the Company that specifically states it is changing this Agreement.  Each of the covenants contained in this Agreement will be construed as ancillary to and independent of any other provision of this Agreement, and the existence of any claim or cause of action of the Employee against the Company or any officer, director, or shareholder thereof, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of the covenants of Employee contained in this Agreement.

**11.    Assignment.**  Neither party may assign any of its rights or obligations under this Agreement without the other party's prior written consent, except that the Company may, without Employee's consent, assign its rights and obligations hereunder to (a) any of its affiliates or (b) any person or entity that purchases or otherwise acquires all or substantially all of the Company's interests or assets.

**12.    Waivers.**  Any failure by the Company to enforce any part of this Agreement shall not affect the Company's right to enforce this Agreement at a later time, nor shall any failure by the Company to enforce any part of any similar agreement it may have with another current or former employee affect the Company's right to enforce any part of this Agreement.  No waiver by the Company of any provision in this Agreement, or of any breach of any such provision, shall be effective unless in writing and signed by the Company's General Counsel, and no waiver

- 6 -

EE
Initials

Company
Initials

in any one or more instances shall be deemed to be a further or continuing waiver of any such provision or breach in other instances or a waiver of any other provision or breach of any other provision or covenant.

**13.** **Governing Law; Jurisdiction and Venue; No Jury Trials.** All questions concerning the construction, validity, enforcement, or performance of this Agreement shall be governed by the laws of the State of Texas, without regard to any principles of conflicts of law. The Company and Employee agree to bring and pursue any suit, action or proceeding arising under or related to this Agreement only in the state and federal courts in Harris County, Texas, freely consent to the personal jurisdiction and venue of those courts, waive any right to argue that jurisdiction or venue in any such court is improper, inappropriate or inconvenient, and waive any right to assist, participate in, or consent to any such suit, action or proceeding being transferred to or litigated in any other court. **To the extent permitted by law, each party to this Agreement voluntarily waives its right to have a jury hear or decide any claim that arises under or relates to this Agreement.**

**THE CHEFS' WAREHOUSE WEST COAST, LLC**

Signature

Viola Thompson
HR Generalist
Title

3/20/23
Date

**EMPLOYEE**

Signature

Anthony (Tony) Smith
Print Name

3/20/23
Date

- 7 -

EE
Initials

Company
Initials

## EXHIBIT A

**Section 1 Disclosures:**

None.



EE
Initials          Company
Initials

# EXHIBIT B

# Dairyland Produce, LLC

# Employee Handbook

## *-Multi-State-*



Effective January 2024

# Dairyland Produce, LLC

## Employee Handbook

**ABOUT THIS HANDBOOK / DISCLAIMER**

**We prepared this Employee Handbook (this "Handbook") to assist you in finding the answers to many questions that you may have regarding your employment with the Company. Please take the necessary time to read it.**

We do not expect this Handbook to answer all of your questions. Your manager and the Human Resources Department also will be a major source of information.

**The Company adheres to the policy of employment at will, which permits the Company or the employee to terminate the employment relationship at any time, for any reason or no reason, with or without cause or notice. This Handbook shall not constitute or be considered an agreement or contract (express or implied) regarding an individual's employment or any term or condition of that employment. No manager, director, or other person is authorized to provide any employee with an employment contract or any other agreement concerning terms or conditions of employment of any kind.**

Many matters covered by this Handbook, such as benefit plan descriptions, are also described in separate Company documents. These Company plan documents are always controlling over any statement made in this Handbook or by any member of management.

This Handbook states only general Company guidelines. The Company may, at any time, in its sole discretion, modify or vary from anything stated in this Handbook, with or without notice, except for the rights of the parties to terminate employment at will. Additionally, federal, state, and local laws pertaining to employment are subject to frequent change, and this Handbook is not, and is not intended to be, an exhaustive repository of legal requirements pertaining to employment. Accordingly, the Company complies with all applicable laws even if not referenced in this Handbook, and should any policy in this Handbook conflict with any current law or regulation, such law or regulation shall govern the terms of your employment. Questions concerning any policies in this Handbook, or any laws governing your employment with the Company can be directed to our Human Resources Department.

This Handbook supersedes all prior employee handbooks.

# V.  General Standards of Conduct

## 5-1.  Workplace Conduct

The Company endeavors to maintain a positive work environment. Each employee plays a role in fostering this environment. Accordingly, we all must abide by certain rules of conduct, based on honesty, common sense and fair play.

Because everyone may not have the same idea about proper workplace conduct, it is helpful to adopt and enforce rules that all can follow. Employee misconduct may subject the offender to disciplinary action, up to and including termination, in the Company's sole discretion. Although it is not possible to provide an exhaustive list of all types of impermissible conduct and performance, the following is a non-exhaustive list containing examples of impermissible conduct and performance:

- Obtaining employment on the basis of false or misleading information;
- Stealing, removing, or defacing Company property or a co-worker's property, and/or disclosure of Confidential Information (defined below);
- Completing another employee's time records;
- Dishonesty;
- Falsification of Company documents;
- Violating the Company's safety rules and policies;
- Violating the Company's Drug and Alcohol-Free Workplace Policy;
- Fighting, threatening, or disrupting the work of others or other violations of the Company's Workplace Violence Policy;
- Insubordination or disobedience of a lawful management directive;
- Use of foul, profane, obscene, intimidating, abusive, sexually explicit, or otherwise unprofessional language;
- Loitering or loafing during work time, or leaving a work area without the permission of management;
- Violating the Punctuality and Attendance Policy, including but not limited to irregular attendance, habitual lateness, or unexcused absences;
- Gambling on Company premises;
- Leaving Company premises prior to the end of any shift without management's permission;
- Willful or careless destruction or damage to Company assets or to the equipment or possessions of another employee;
- Wasting work materials;
- Performing work of a personal nature during working time;
- Violating the Solicitation and Distribution Policy;
- Violating the Company's Equal Employment Opportunity Policy or its Policy against Discrimination and Harassment;
- Violating the Technology Use Policy;

- Unsatisfactory job performance; and
- Any other violation of Company policy.

This workplace conduct policy does not affect the at-will relationship between you and the Company. The Company also reserves the right to impose whatever discipline it chooses, or none at all, in a particular instance. The Company will deal with each situation in its discretion and nothing in this Handbook should be construed as a promise of specific treatment in a given situation.

The observance of these rules will help to ensure that our workplace remains a safe and desirable place to work.

# 5-5. Mobile Device Policy

**Purpose**

The Company recognizes that some of its employees rely on mobile devices to carry out their job duties. The Company maintains this Mobile Device Policy to ensure that employees can recognize the benefits of mobile access to company information while also protecting sensitive information and fairly compensating eligible employees for use of their personal devices for business purposes. Mobile devices include, but are not limited to, smart phones, tablets, and other similar devices.

**Applicability**

This policy applies to any Company employee, contractor, consultant or third party resource who accesses Company information resources, communicates, or otherwise conducts Company business via a mobile device ("Users").

**Policy Statement**

Users are responsible for accessing Company resources and conducting Company business appropriately, responsibly, lawfully and ethically in compliance with the Code of Business Conduct and Ethics. The Company may, in its sole discretion, provide employees with mobile devices and services for the sole purpose of conducting Company business. All employees issued such mobile devices are expected to care for them, use them appropriately, and keep them secure. In addition, the Company permits eligible Users to use any approved personally owned mobile devices to perform work for the Company.

**Policy Implementation for Personal Mobile Devices**

Employees fall within one of three classes with respect to personal mobile device use for Company business:

- Business Required: Employees who have a bona fide business purpose for regular remote access and communication as part of their job duties.  This includes employees who regularly conduct work outside their regular business hours, travel for business purposes at least 40 percent of the time, are vice presidents or above, or whose job duties otherwise dictate a need for regular remote access and communication.   A Business Required employee must be certified as meeting the criteria by his or her department head. The Company will subsidize Business Required employees for the use of their personal mobile device for business purposes.  In acknowledgement of this business use of their personal mobile device, Business Required employees will receive a monthly stipend of $50 towards the cost of their mobile service contract and equipment.  If your reasonable and necessary expenses exceed this stipend amount, please contact Human Resources to submit a request for further reimbursement.  The Company will not reimburse any employee for purchase of mobile device hardware or accessories.

- **Business Preferred: Employees who are not required to be available remotely on a regular basis but for whom mobile access may generally assist in their day-to-day duties.**
  This includes employees whose job requirements do not meet the requirements for Business Required use but for whom regular travel is expected or regular after-hours availability is expected. A Business Preferred employee must be certified as meeting the criteria by his or her department head**.**

  The Company will subsidize Business Preferred employees for the use of their personal mobile device for business purposes.  In acknowledgement of this business use of their personal mobile device, Business Preferred employees will receive a monthly stipend of $30 towards the cost of their mobile service contract and equipment.  If your reasonable and necessary expenses exceed this stipend amount, please contact Human Resources to submit a request for further reimbursement.  The Company will not reimburse any employee for purchase of mobile device hardware or accessories.

- **Business Optional: Employees who have no business need to access company information on mobile device and are not expected to be available remotely but who wish to opt into such access for convenience.**

  The Company acknowledges that some employees who do not meet the Business Required or Business Preferred criteria may choose to have access to their Company email and calendar on their personal mobile device for their own convenience.  These employees are rarely, if ever, expected to travel and are not expected to be available remotely.  They are provided all appropriate tools to carry out their job duties without use of their personal mobile devices but are permitted to enroll their device purely for their own convenience.  Business Optional employees must be approved by their department head.

Employees who are not in the Business Required, Business Preferred, or Business Optional classes may not use personal mobile devices to access Company information. Users who are not employees of the Company are not eligible for the monthly stipends.

The Company may adjust the amount of the stipends set forth herein at any time and for any reason.

Business Optional employees who are not eligible for a regular stipend based on the guidelines set forth herein but who are irregularly required to use their personal mobile device for business purposes, can seek reimbursement for the portion of their mobile service costs reasonably related to business purposes through the expense reimbursement process contained in the Company's Travel and Expense Policy on an as-incurred basis.

mpany will initiate a complete wipe of a lost or stolen device.  The Company protects the privacy of personal apps and data on personal mobile devices by restricting administrative access to device management software and auditing all administrative activities initiated through this software to ensure privacy is respected.

## Support

All support for company-owned devices is provided through the Company's help desk and these devices should never be taken to a carrier store or kiosk for assessment or repair, unless directed by the IT department.

The Company's help desk will provide support for personal devices when it comes to connectivity and back-end system operational questions only.  The help desk has no obligation to provide hardware specific support, support regarding personal data or applications, or device operational questions.

If a User's personal device is damaged while conducting Company business, the Company will not reimburse the User for any hardware repairs or replacements.

**Backup and File Sharing or Synchronization**

On company-owned devices, backups will be configured by the IT help desk.  This functionality must not be disabled.

On personal mobile devices, users are responsible for backing up all personal information. The Company will not backup personal data or applications.

**User Roles & Responsibilities**

The User is responsible for protecting any device that contains Company information or connects to Company resources. Users must ensure that they comply with all sections of the Mobile Devices Policy.

- Users are limited to enrolling one (1) smart phone and one (1) additional mobile device.

- Users must accept that the Company's security policy will be enforced on the device. This includes minimum standards regarding passcodes to access the device.

- Users are responsible for staying up to date on phone operating system versions, app upgrades, regularly backing up data and protecting the device with inherent security including passcodes.

- Users must allow the installation of the Company's device management software.

- Users may not charge personal application purchases to the Company.

- Users are expected to pay their cellular bills for personal devices in a timely fashion. The Company will not act on the User's behalf to pay any charges.

- If a company-owned device is going to be used while traveling on business outside the U.S., the employee should contact the help desk to be configured to temporary international usage. On a personal device, the User is responsible for updating the service plan when traveling outside the US.

**Appropriate Use**

Users of mobile devices are expected to adhere to the following guidelines regarding appropriate use.

- Users may not use any device in a manner that may be construed by others as harassing or offensive based on race, national origin, sex, sexual orientation, age, disability, religious beliefs or any other characteristic protected by federal, state or local law.
- New employees who use their personal device at the Company must first erase all information related to any previous employment.

- The Company prohibits Users from handheld use of a mobile device while operating a Company vehicle.  Users must also abide by all applicable legal prohibitions on the use of these devices while operating vehicles of any kind.

**User Privacy**

As with all other company provided resources, there is no expectation of privacy with respect to the use of company provided mobile devices.

The Company will not access personal information from personal devices, or make such information, available to third parties, unless ordered to do so by a legitimate civil or criminal e-discovery request or subpoena or the device owner's written authorization for such a disclosure. Moreover, the Company will not maintain access to data outside Mobile Device Management apps installed on the device.

**Confidentiality and Proprietary Rights**

Confidential information and intellectual property, including trade secrets, are extremely valuable to the Company.  You must treat this information accordingly through the use of mobile devices. Disclosure of the Company's confidential information or intellectual property to anyone outside the company is strictly prohibited.

# 5-6.  Technology Use Policy

**Applicability**

This policy applies to all Users of Company computer resources, wherever they may be located, and regardless of their role.

**Policy Statement**

**Security**

The Company has implemented various systems and policies, to assure the safety and security of computer resources. Users may not attempt to disable or circumvent any of these measures implemented by the Company.

Users should be aware that if their computers are left unlocked while away, others may gain access to restricted Company files, and logs will record the User's ID as the violator.

Therefore, it is in the interest of each User to lock their computers when it is unattended. Use "**Ctrl+Alt+Del**" or "**Windows logo key + L**" to lock the computer.



| Windows logo key ⊞ + L | Lock your Computer |
| Ctrl + Alt + Delete | Starts Windows security, and allows users to lock the Computer |

- Each User is responsible for ensuring that the use of outside computers and networks does not compromise the security of the Company computer resources.

- All material downloaded and/or received MUST be pre-scanned with Company approved software for viruses, malware and other destructive programs.
- A User's ability to connect to systems through computer resources does not imply a right to connect.
- Use of passwords to gain access to computer resources does not imply that Users have an expectation of privacy in the material they create or receive on computer resources.

Information relating to virus attacks, hacking, and other breaches of security must be treated as confidential and proprietary information, and employees are forbidden from disclosing such information.

**Internet Use**

This section of the policy defines the appropriate use of the Internet and it applies to all Users who access the Internet through Company computer resources.  Computer resources should be used for legitimate and authorized business purposes only. Occasionally personal use is acceptable if it does not:

- Adversely affect the intended business use of computer resources;
- Interfere with Users work performance; or
- Violate any law or regulation; or Company policies, guidelines, or standards.

Visiting sites that contain any of the following materials is prohibited:

- Pornography / Hate / Crime / Gambling
- Derogatory or discriminatory content (based on race, sex, religion, origin, age, or disability)
- Fraudulent, harassing, embarrassing, profane, obscene, intimidating, defamatory content

Users are prohibited from using Company's computer resources for any other business solicitation or profit-making activities.

Users are prohibited from transmitting any material that is, in the Company's sole discretion, offensive, unlawful, obscene, threatening, abusive, or encourages conduct that would constitute a criminal offense.

Users may not deliberately perform acts that waste or overburden computer resources. These acts include but are not limited to, playing games, streaming of non-work-related content, or creating unnecessary traffic.

Users who choose to store or transmit personal information do so at their own risk. The Company is not responsible for any loss of information.

The Company tracks Internet usage to ensure appropriate use and has the right to suspend access to users who abuse this privilege.  Refer to "Monitoring of Usage and Activity" for details.

**Software and Downloads**

Employees must use only software that is authorized by the IT department on the company's computers. Authorized software must be used in accordance with the software supplier's licensing agreements. Without prior authorization from IT leadership and proper licensing, users may not:

- Install software on any computer resources
- Provide copies of software to any third person; independent contractor or client of company
- Modify, revise, transform, recast or adapt any software on any computer resources
- Reverse-engineer, disassemble or decompile any software on any computer resources
- Copy material protected under copyright law
- Use computer resources to download or distribute pirated software or data

**Corporate Email Use**

Misuse of e-mail can pose many risks to the Company, and thus it is important for users to understand the appropriate use of e-mail communications.

- Anonymous electronic communications are forbidden.  All messages written by others should be forwarded "as-is" and with no changes.
- Personal or non-work-related Emails to a global distribution list is prohibited.  Emails to a global distribution list must be channeled through the appropriate distribution list owner.
- Users are forbidden from using any email or messaging communication system (personal accounts, etc.) other than the official Company's system to conduct business communications and may not forward or store (in any form) business-related communications to personal accounts.
- Users should refrain from using any email backgrounds or signatures that include graphics. Further, advertisements may not be included as a standard component of any email signature or background.

All emails must be retained in accordance with both the Records Policy and the Retention Schedule.

**Proprietary and Confidential Information**

All information and data created or obtained using the Company computer resources is the property of Company.  Users are strictly forbidden from transmitting any confidential Company information, customer data, trade secrets or any other Company proprietary materials to unauthorize parties during employment and after termination.

Users must take precautions to ensure that confidential/proprietary information is not improperly disclosed.

**Monitoring of Usage and Activity**

The Company has the right, but not the duty to monitor (without cause or notice) computer resources, including but not limited to:

- Sites visited
- Chat groups (e.g. Messenger, Hangouts, etc.)
- Storage (e.g. Dropbox, Box, Google Drive, etc.)
- Email services (e.g. Hotmail, Gmail, Yahoo, etc.)
- Social Media sites (e.g. Twitter, LinkedIn, etc.)
- Communications and data stored or transmitted.

Users have no expectation of privacy, and expressly waive any right to privacy when using Company resources.

Management will verify compliance with this policy through various methods, including but not limited to, periodic monitoring, reports, as well as internal and external audits.

Any user found to have violated this policy may be subject to disciplinary action, up to and including termination of employment.

**Clear Desk and Clear Screen Practice**

In order to reduce the risk of unauthorized access or loss of information, the company enforces a clear desk and screen practice as follows:

- Computers must be logged off/locked or protected with a password when unattended.
- Personal or confidential business information must be protected using security features (e.g. secure print).
- Care must be taken to not leave confidential material visible on your desk, or on printers or photocopiers.
- All printed confidential business information must be disposed of using confidential waste bins or shredders.

**Telephone (Voice) Equipment Conditions of Use**

Use of the company's voice equipment is intended for business use.

Employees must not:

- Use the company's phone system for conducting private business.
- Make hoax or threatening calls to internal or external destinations.
- Accept reverse charge calls from domestic or International operators, unless it is for business use.

**It is your responsibility to report suspected breaches of security policy without delay to your line management, the IT department, the Information Security department or the IT Helpdesk.**

## 5-16.   Confidential Company Information

During the course of work, an employee may become aware of Confidential Information about the Company's business. "Confidential Information" is non-public information about the Company's business, including but not limited to information regarding Company finances, pricing, products and new product development, software and computer programs, marketing strategies, suppliers, customers and potential customers, and knowledge, skills and abilities of personnel. An employee also may become aware of similar confidential information belonging to the Company's clients. It is extremely important that all such information remain confidential, and particularly not be disclosed to our competitors. Any employee who improperly copies, removes (whether physically or electronically), uses, or discloses Confidential Information to anyone outside of the Company (whether during their employment or thereafter) may be subject to disciplinary action, up to and including termination. Employees may be required to sign an agreement reiterating these obligations.

No Company employee shall be held liable under any federal or state trade secret law for the disclosure of a trade secret that the employee made (a) in confidence to a federal, state, or local government official or the employee's legal counsel solely for the purpose of reporting or investigating a suspected violation of law, or (b) in a complaint or other document filed in a lawsuit or other proceeding provided that the employee filed the complaint or document under seal. In the event a Company employee files a lawsuit based on claims the Company retaliated against the employee for reporting a suspected violation of law, the employee may disclose the trade secret to the employee's legal counsel and use the trade secret information in the court proceeding, provided that the employee (i) files any document containing the trade secret under seal; and (ii) does not disclose the trade secret, except pursuant to order of the court or arbitrator. Further, nothing in this policy prohibits any employee from making reports of actual demonstrable violations of law or regulation to any governmental agency or entity solely to the extent prohibiting the making of such reports would violate applicable law affording whistleblower protection for the making of such reports, or requires notification or prior approval by the Company of any such reports.

There are certain disclosures that the Company's employees may make on behalf of themselves and any other current or former employees of the Company that are protected under the NLRA. Protected disclosures include those regarding the terms and conditions of an employee's employment with the Company. As such, nothing in this policy or Handbook is intended to or does restrict the Company's employees from disclosing the following to anyone, including current and former coworkers, unions, and third parties: the terms and conditions of employment with the Company, including compensation, benefits, conditions of employment, and concerns regarding health and safety, as they pertain to any of the Company's current or former employees.